IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1551 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**Introduction**

Plaintiff applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381a, 1382c, almost nine years ago, in July of 2009. (Administrative Record (R. ) 613-15). She claimed that she became disabled as of April 9, 2009 (R. 613), due to rheumatoid arthritis, COPD, and migraines. (R. 691). Her claim bounced around the administrative review process for nearly a decade. Along the way it was denied, repeatedly, at every level: initial, reconsideration, administrative law judge (ALJ), and appeals council. There were two remands from the Appeals Council, and three denials by two different ALJs. It is that final ALJ's decision, from February 17, 2017, that is before the court for review. See 20 C.F.R. § 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on March 1, 2018, and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. §636(c) on April 3, 2018. [Dkt. # 11]. The case was then reassigned to me several months later, on January 10, 2019. [Dkt. #33]. Plaintiff asks the court to reverse and remand the

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## Standards of Review

We review the ALJ's decision directly, but we play an "extremely limited" role. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ's decision should be affirmed if it is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Therefore, "even if 'reasonable minds could differ concerning whether [an applicant] is disabled,'" we must affirm if the ALJ's decision has adequate support. *See also Shideler v. Astrue*, 688 F.3d 306 (7th Cir. 2012); *Simila v. Astrue,* 573 F.3d 503, 513-514 (7th Cir. 2009); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir.2007).

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. *See* 42 U.S.C. §405(g). *See Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

In the Seventh Circuit, the ALJ also has an obligation to build what is referred to as an "accurate and logical bridge" between the evidence and the result to afford the claimant in order to afford meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d

2

809, 813 (7th Cir. 2015); *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court must be able to trace the path of the ALJ's reasoning from the evidence to the conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build a "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). As the court put it in *Sarchet*, "we cannot uphold a decision by an administrative agency...if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."[2] Thus, even if the *court* can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is still not a case of harmless error. The fact that had the administrative law judge considered the entire record, the ALJ might have reached the same result does not prove that the failure to consider the evidence was harmless. The ALJ could well have reached a different result. That, at least, is the theory in this Circuit. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).[3]

---

2 The phrase "logical bridge" seems to have first appeared in *Thompson v. Clifford*, 408 F.2d 154, 167 (D.C. Cir. 1968), where Judge Spottswood Robinson said in an administrative case not involving Social Security that: " 'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." Judge Posner then used the phrase "logical bridge" in a Social Security case merely to require Administrative Law Judges to articulate the reasons for their decisions. *Sarchet, supra*. But, *Sarchet* did not heighten the burden of proof or inform ALJs in Social Security cases of rules that had to be followed or tests to be employed.

3 *Sarchet* never intended that the logical bridge" requirement compel or warrant a hypercritical approach to an ALJ's decision. The "logical bridge" requirement is not about *elegantia juris or* aesthetics. The ALJ need not build the Pont Neuf. A simple trestle will suffice so long as it allows the reviewing court to traverse safely the divide between the evidence and the conclusions. Hence the acknowledgment that the logical bridge requirement is a lax one. The ALJ's explanations in this case more than satisfy the obligations of *Sarchet*.

But, the Seventh Circuit has emphasized that this requirement is a "lax" one, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), and reviewing courts "will not 'displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations.'" *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). Indeed, appellate review of credibility determinations, is quite limited, and reviewing courts should rarely disturb an ALJ's credibility determinations – which are entitled to special deference – unless the credibility finding is unreasonable or unsupported by the record. *Scheck v. Barnhart*, 357 F.3d 697, 703 (2004). *Accord Green v. Saul,* _Fed.Appx._, 2019 WL 3297472, at *3 (7th Cir. 2019); *Metzger v. Astrue*, 263 Fed.Appx. 529, 533 (7th Cir. 2008).

Indeed, determinations of credibility are fraught with uncertainty. *Carradine v. Barnhart,* 360 F.3d 751, 753-754 (7th Cir. 2004). As all the courts have acknowledged, the ALJ, unlike a reviewing court, had the opportunity to observe the claimant testifying, and, as Justice Jackson rightly observed, "a few minutes observation... in the courtroom is more informing than reams of cold record." *Ashcraft v. State of Tenn.*, 322 U.S. 143, 171 (1944)(Jackson, J., dissenting). *See also Scheck v. Barnhart,* 357 F.3d 697, 703 (7th Cir. 2004);*Green*, *supra* (recognizing the special deference owed to those who make initial credibility determinations based on their intimate involvement in the case and exposure to the actual testimony of the witnesses).

In short, because the reviewing court lacks direct access to the witnesses, lacks the trier's immersion in the case as a whole, and lacks the trier's experience with the type of case under review, appellate review in Social Security cases is limited and carefully defined. *See, e.g.*, *Carradine v. Barnhart,* 360 F.3d 751, 753-754 (7th Cir. 2004)*; Dixon v. Massanari,* 270 F.3d 1171, 1178–79 (7th Cir.2001); *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000); *Fairman v. Anderson,* 188 F.3d 635, 647 (5th Cir.1999).

4

**FACTUAL BACKGROUND**

Plaintiff was born on June 19, 1974, and so was 35 at the time she applied for SSI, and 46 at the time of the ALJ's decision. While she alleges she became disabled on April 9, 2019, she also tells us that she quit working for good June 1, 2004, when she was not even 30 years old. (R. 691). Prior to that, she worked just one month in a kitchen preparing food and washing dishes. (R. 701-06); [Dkt. #3, at Page 2/4]. The last time she worked for a full year appears to have been 2001. (R. 638). She receives Medicaid and Link, and is the representative payee for her child and one of her grandchildren for SSI and public assistance from the state. (R. 48-49, 75).[4]

Following three administrative hearings – at which Plaintiff, represented by counsel, testified along with medical and vocational experts – the ALJ determined Plaintiff was not disabled. The ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, rheumatoid arthritis, migraine headaches, carpal tunnel syndrome, and obesity. (R. 18). The ALJ embarked on a lengthy summary of the medical evidence and determined that Plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings. (R. 19-26).

The ALJ then determined that Plaintiff could perform "sedentary work . . . with [these] additional non-exertional limitations":

- Occasionally lift a maximum of 10 pounds;
- Frequently lift and/or carry less than 10 pounds;

---

4 Plaintiff was allowed to proceed *in forma pauperis* in this case in March of 2018. In her application, she swore under penalty of perjury that she received no public assistance of any kind. [Dkt. #3, ¶. 4(f)].

- Walk and/or stand for about 2 hours total out of an 8-hour workday;
- Sit for about 6 hours out of an 8-hour workday; and
- Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to:

Postural limitations were:

- Never climbing ladders, ropes, or scaffolds;
- No more than occasional climbing of ramps or stairs; and
- No more than occasional balancing, twisting, stooping, bending, crouching, kneeling, or crawling;
- Requiring a sit-stand option allowing to stand one to two minutes after sitting for forty-five minutes;

Manipulative limitations were:

- No more than occasional reaching overhead with bilateral upper extremities; and
- No more than frequent handling, fingering, and feeling with bilateral hands;

And

Environmental limitations were:

- Avoiding all exposure to work hazards such as unprotected heights and dangerous moving machinery;
- Avoiding concentrated exposure to uneven terrain and wet slippery surfaces; and
- Avoiding concentrated exposure to lung irritants, vibrations, temperature extremes, wetness, and humidity.

(R. 26-27).

The ALJ said that while he found it reasonable to expect that the claimant's medically

determinable impairments could cause her alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were "not" entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision. (R. 28). In addition to noting the medical evidence, the ALJ noted several other inconsistencies between Plaintiff's testimony and the record. (R. 27-29). The ALJ then went into depth regarding how plaintiff's RFC finding accounted for each of her limitations to the extent they were credible. (R. 29-30).

Next, the ALJ went through the opinion evidence. He gave some weight to the opinion of the medical expert, but stopped short of according it more than that as the doctor had not reviewed the evidence submitted after the hearing. (R. 30). Similarly, the ALJ rejected the opinion from the medical consultant who reviewed the record before all the evidence had been accumulated. The second reviewing doctor's opinion, based on far more evidence, was given some weight. (R. 30-31).

Next, the ALJ, relying on the testimony of the vocational expert found, that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: call-out operator (45,000 jobs); cutter-paster (22,800 jobs). (R. 32). The ALJ concluded that Plaintiff was not disabled and was not entitled to benefits under the Act. (R. 32-33).

**ARGUMENT**

Plaintiff argues that the ALJ's RFC assessment is incomplete because the ALJ failed to account for limitations due to the plaintiff's claimed migraine headaches and side effects of medication. [Dkt. #21, at 7-10]. Plaintiff also finds fault with the ALJ's assessment of her subjective complaints, arguing that the ALJ improperly considered the fact that Plaintiff was

7

able to care for three children, use her cellphone to access sites like Facebook and read books. [Dkt. # 10-13]. Plaintiff also contends it was improper for the ALJ to consider the fact that she had not been compliant with treatment. [Dkt. # 21, at 14]. Those being the only points Plaintiff raises, any other arguments she might have made are deemed waived. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

### A.

We begin with the headache issue. Plaintiff submits that she has been diagnosed with and suffers from frequent migraines. [Dkt. #21, at 7]. But, a diagnosis does not mean someone is disabled, as the Seventh Circuit has repeatedly held. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified . . . they have caused her such severe pain that she cannot work full time."). Migraines might be disabling, or they might not. *See, e.g., Hammerslough v. Berryhill*, 758 Fed.Appx 534 (7th Cir. 2019); *Dorota K. M. v. Berryhill*, 2018 WL 5298532 (N.D. Ill. 2018); *Tucker v. Astrue*, 2009 WL 3060223 (S.D. Ind. 2009). Here, the evidence Plaintiff relies on does not show her headaches are disabling or even frequent. Indeed, her claim is bottomed on her own testimony that they are and was contravened either by her own statements to her doctors and/or the significant absence of reports of headaches to those very doctors – reports that one obviously would expect if her testimony at the hearing were credible. *See Metzger*, 263 Fed.Appx. at 533 (physician reports did not corroborate the level of difficulty the applicant described in connection with his claim for benefits. Additionally, the reports did not indicate claims by the applicant of the kind of

8

headaches he claimed were relatively constant and debilitating).

Even a claimant's statements to a physician that are belied by the facts need not be credited. Thus, in *Hammerslough v. Berryhill*, 758 F. App'x at 539, the ALJ found Hammerslough's testimony at the hearing of continuous, debilitating headaches to be contrary to reports that Hammerslough told his neurologist, Dr. Riskin, that he took his headache medicine (Percocet) no more than twice a week," and that "pain control is generally adequate." So too here. Of equal significance is the fact that out of a medical record that is over 1200 pages long and covers the decade from 2006 through 2016 (R. 751-1986), Plaintiff is able to direct the court to just six occasions where she even mentioned migraines to her doctors: October 8, 2007; June 16, 2008; August 24, 2011; June 25, 2012; October 22, 2014; and April 28, 2015. [Dkt. # 21, at 7 (citing R. 859, 865, 1016, 1223, 1271, 1429, 1852)]. Six times in over a decade is not frequent. Obviously, if there were more evidence regarding Plaintiff's migraines in the record, her attorney would have cited it. Judges are not expected to be archaeologists, sifting through a 2000-page transcript in search of evidence to support one side's case. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014). *See also Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)("As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in the record.'"). After all, "[a]n advocate's job is to make it easy for the court to rule in his client's favor ...." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

Moreover, plaintiff was diagnosed with a sinus headache on August 24, 2011, rather than a migraine. (R. 1016). She told her doctor on June 25, 2012 that she got migraines only occasionally. (R. 1852). She had no pain at all on October 22, 2014 (R. 1426, 1429); and on

9

April 28, 2015, she told her doctor – the only time in the cited evidence that she actually sought treatment for a migraine – that Tylenol and Imitrex normally work but she had run out. (R. 1223, 1225, 1271-73).

**B.**

The only other "evidence" supposedly supporting the plaintiff's claim of frequent, debilitating headaches is her testimony. [Dkt. # 21, at 7].[5] The plaintiff claimed that she got migraines two, three, four times a week, accompanied by nausea and photosensitivity. (R. 186-87, 2015). She testified that when she got a headache, she took a shower, with the water hitting her face, and took Imitrex and then Excedrin if that didn't work. (R. 187). So, on the one hand, the ALJ had a record that – and, obviously Plaintiff's brief puts forth her best case – included a handful of mentions of headaches over ten years, little treatment, and Plaintiff telling her doctors medication normally worked and headaches came only occasionally. That testimony stands in marked contrast to plaintiff's obviously self-interested testimony at the hearing that she suffered crippling headaches two to four times a week.

Of course, an ALJ is not required to accord testimony of a plaintiff – or of anyone for that matter – the weight of an encyclical. If the rule in Social Security cases were otherwise, there would be no such thing as a credibility determination, which could vary depending on the facts of the case. There would be only a fixed rule that inevitably favored the plaintiff. *Metzger*, *supra*, 263 Fed.Appx. at 533. Of course, there is no such rule, nor could there be. Credibility is a

---

5 Plaintiff's counsel mistakenly cites his own comments before her administrative hearing as evidence of Plaintiff's frequent and disabling migraines. [Dkt. #21, at 7 & 8 (citing R. 115-16)]. But, of course, that's not evidence. *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 569 (7th Cir. 2015)(attorney's statements and arguments are not evidence); *United States v. Adriatico-Fernandez*, 498 F. App'x 596, 599 (7th Cir. 2012).

10

*post-hoc* function that takes into account not merely the credibility of a party, but of competing witnesses and all the relevant evidence in the case. It does not view the testimony of an interested witness in isolation and presumptively credit it as true. In this context, as in all others, merely insisting that a party's position is the correct one, doesn't make it so. *See, Gaston v. Ghosh,* 920 F.3d 493 (7th Cir 2019); *Long v. Pfister*, 874 F.3d 544, 555 (7th Cir. 2017).

So, even where there exists a medically determinable impairment that could reasonably be expected to produce complained of symptoms, an ALJ is not required to credit a claimant's testimony. *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014), Obviously an ALJ cannot conclude *a priori* that a claimant's testimony is truthful and thus automatically entitled to credence. The presence of the oath, as long and bitter experience teaches, does not ensure that mistake or perjury is a stranger to trials. "An oath to give 'nothing but the truth does not guarantee honesty."[6] *United States v. Lewis*, 405 F.3d 511, 512 (7th Cir. 2005). Self-interest is a fundamental fact in human nature. As bitter experience teaches witnesses may "lie... when it is to their advantage." *Schmude v. Tricam Industries, Inc*., 556 F.3d 624, 628 (7th Cir. 2009).[7] *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir.2006).

Social security cases are obviously not exempt from this rule of long experience. Were the rule otherwise, social security hearings would be essentially predetermined affairs in which applicants would automatically prevail and disability benefits would be available for the asking.

---

6 Overall, the tenor of Plaintiff's brief seems to be that mere allegations by a plaintiff win the day. Of course, they don't. Here, as always, evidence, not partisan conclusions, must govern. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1162 (2019).

7 Social Security hearings are obviously not an exception to this basic and undeniable rule of life, although the plaintiff's brief seems tacitly to assume otherwise. [Dkt. #21, at 8-9].

Of course, they are not. Thus, an administrative law judge is free to discount an applicant's testimony (or that of any other witness) on the basis of the evidence in the case, and a reviewing court's role is not to second guess an ALJ's credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Mori v. Acting Comm'r of Soc. Sec.*, 2017 WL 2263109, at *9 (D. Ariz. 2017). The question is always whether substantial evidence supports the conclusion. *Green v. Saul*, __ F.3d __, 2019 WL 3297472, at *4 (7th Cir. 2019); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

Still, ALJs do have to support their findings with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Their credibility findings can be overturned only if they are "patently wrong." *See Elder v. Berryhill*, _Fed.Appx._, 2019 WL 2305519, *3 (7th Cir. 2019); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). And a claimant is not entitled to disability benefits because her physician states she is disabled or unable to work. *Dixon*, 270 F.3d at 1177. It is for the ALJ to weigh the evidence and to make judgments about which evidence is most persuasive. *Farrow v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989). Based on the record evidence in this case, the ALJ did not believe Plaintiff's migraines were as severe or as frequent as she claimed.

While it may be true, as Plaintiff protests in her brief, that the Seventh Circuit has on occasion not allowed ALJs to reject a claimant's testimony solely on the basis of objective evidence, [Dkt. # 21, at 8], in this instance, the protest is born of a superficial reading of the ALJ's Opinion. Nowhere does the ALJ say that some study fails to show that Plaintiff's migraines are severe or frequent. Instead, she points to the stark inconsistency between Plaintiff's *claim* of crippling migraines two to four times a week and what Plaintiff herself tells

us is a ten-year record covering 1200 pages with only four mentions of migraine complaints. If, in fact, her headaches were as frequent and severe as she claimed at the hearing, common sense and human experience – which have a role to play in all cases including Social Security cases – teaches that the plaintiff would have complained regularly and vociferously to her doctors over the decade that is encompassed by her records. Add to that the fact that those mentions include her telling her doctor her migraines are occasional, not four days a week as she told the ALJ. She also admitted to her doctor that her medicine normally works to abate them when they do occasionally arise. "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). *See also Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir.2005);*Mueller v. Astrue*, 860 F. Supp. 2d 615, 633 (N.D. Ill. 2012). Thus, it cannot be said that the credibility determination made by the ALJ was erroneous, let alone that it was "patently wrong."

Many opinions have held that the ALJ may consider a number of factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). In the Seventh Circuit, the court has said that the Social Security Administration recently announced that it would no longer assess the credibility of an applicant's statements, but would, instead, focus on determining the intensity and persistence of the applicant's symptoms, especially since an

assertions of pain often cannot either be credited or rejected on the basis of medical evidence. But no matter how a court explains the ALJ's proper role in making credibility judgments, all are agreed that if the ALJ's credibility finding is supported by substantial evidence, the court may not engage in second-guessing. In this case, the record does not support the plaintiff's claim that she got frequent, debilitating migraines. [Dkt. #21, at 9].

It is, of course, not conclusive that the plaintiff (or any other witness) was under oath at the hearing. (*See* discussion *supra*). [Dkt. #21 at 9]. If the administration of the oath were somehow conclusive in Social Security cases, then hearings would be superfluous, and every applicant's testimony would have to be accepted as true. Of course, no such principle exists. Sworn testimony is obviously no guarantee of veracity. Every witness in every case is sworn. Yet, all cannot be "telling the truth," and the rule for which the plaintiff's brief seems to be contending is obviously incorrect. Moreover, it is worth noting that the Plaintiff in this case lied under the penalty of perjury in her *in forma pauperis* application when she claimed she received no public assistance or welfare of any kind. *Supra*, at n. 1. Disability or lack of income is no excuse for filing a false *in forma pauperis* application. *See Lofton v. SP Plus Corp.*, 710 F. App'x 265, 266 (7th Cir. 2018)(refusing to consider claims of disability and loss of pension and reinstate case dismissed for false *in forma pauperis* petition). In short, this case proves that testimony is not truthful merely because it was given under oath– although the plaintiff's brief seems to suggest otherwise.

Plaintiff also objects to the manner in which the ALJ assessed her allegations. First, she complains that the ALJ ignored her claim that a generalized fatigue and medication side effects cause her to sleep three hours each day. [Dkt. # 21, at 10]. That is simply not true. The ALJ

14

noted the testimony (R. 28), and accounted for it in her RFC finding, accommodating for times when drowsiness could cause Plaintiff to lose focus. (R. 29, 30). The ALJ also questioned whether Plaintiff's claimed 3-hour naps were due to medication, noting that she had testified that she was just tired during the day. (R. 28). Indeed, Plaintiff testified that she napped due to medication at one hearing (R. 223-24) and said she napped simply because she was tired at another. (R. 2009). Plaintiff wanted the ALJ to fully accept her testimony regarding drowsiness during the day at the former hearing and make it a part of her RFC finding with a restriction against concentrating on a task. [Dkt. # 21, at 9-10]. But the ALJ only had to account for limitations she found credible. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). That is what the ALJ did here and she cannot be faulted.

Plaintiff also takes the ALJ to task for noting that she testified that she is able to care for three special needs children and used her phone to engage with social media. [Dkt. # 21, at 12]. But, as these were just two among a roster of reasons the ALJ gave for not believing the extent of Plaintiff's allegations, so they neither make or break the ALJ's decision. As the Seventh Circuit explained in *Halsell v. Astrue*, 357 F. App'x 717 (7th Cir. 2009),"[n]ot all of the ALJ's reasons must be valid as long as enough of them are, . . . and here the ALJ cited other sound reasons for disbelieving Plaintiff." 357 Fed. App'x at 722-23. *See also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). The ALJ also considered the medical evidence, inconsistency of statements, and lack of compliance with treatment – each a valid reason for finding a claimant"s allegations less than fully credible. *See, e.g., Jones*, 623 F.3d at 1161 (Symptom exaggeration); *Getch*, 539 F.3d at 483 (same); *Hall v.*

15

*Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)(inconsistent statements can be a valid reason for finding claimant not fully credible); *Murphy*, 759 F.3d at 816; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013).

The ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed. In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment.

We disagree with Plaintiff when she insists that the ALJ ought not to have concluded she was able to adequately care for three children when her testimony indicated that she struggled to do so. Quite apart from the fact that an ALJ need not uncritically accept the assertions of a Social Security applicant, a more careful reading of the ALJ's Opinion shows that the ALJ was, once again, pointing out significant incongruities in Plaintiff's allegations. Plaintiff testified that she was crippled by headaches two to four times a week, debilitated by arthritis flares two to three times a week, and could do nothing when either happened. At such times, according to her, she could not send the children to school and thus called the school and said they would not be going. The ALJ said, rightfully so, that it was unlikely that the school system and state agencies would silently tolerate children being absent from school multiple times a week on such a frequent basis. That is a common sense judgment the ALJ could make, and common sense and human experience are valuable tools in all cases for judging credibility.[8] Social Security cases

---

8 *See, e.g., New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *United States v. Reichling*, 781 F.3d 883 (7th Cir. 2015). *See also Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016); *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 150 (D.C. Cir. 2015); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.
(continued...)

are not an exception to this fundamental principle of adjudication and of credibility determination. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000).

In this case, the ALJ adequately articulated the reasons for discounting reports based on only one evaluation and largely reflected plaintiff's subjective reporting. *See Elder*, 529 F.3d at 416; *Rice*, 384 F.3d at 371 (ALJs should rely on medical opinions "based on objective observations," not "subjective complaints."); 20 C.F.R. § 404.1527(c)(I) (ALJs should consider "frequency of examination" in weight it assigns opinion). *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

We also disagree with Plaintiff that this case has anything to do with *Wilder v. Chater,* 64 F.3d 335 (7th Cir. 1995), where Judge Posner expressed skepticism that a state agency would be so fastidious that they would not allow a depressed grandmother to adopt her one grandchild. The claimant in *Wilder* had won $2 million in the lottery. As Judge Posner said, an agency would probably look no further than that. *Id.* at 338. Here, there is no lottery windfall and multiple children. If one takes Plaintiff's testimony as Gospel, it seems the children are missing school most of each week without an excuse. We don't have to speculate about the competence of the school system along the lines of what Judge Posner did in *Wilder*. Instead, common sense comes into play, as it always should. *Britt*, 889 F.3d at 426; *Jones v. Astrue*, 623 F.3d at 1161; *Winsted v. Berryhill*, 923 F.3d at 478. The ALJ's inquiry was, as it should have been, focused on the likelihood or unlikelihood of the tale. His credibility determinations should not be disturbed.

---

8(...continued)
2009).*Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.); Posner, How Judges Think, 116 (Harvard University Press 2008). *Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 884 (N.D. Ill. 2019).

Similarly, we have, on the one hand Plaintiff's claimed frequent arthritic flare ups and history of carpal tunnel syndrome and, on the other, her admitted use of her cellphone to access Facebook and read books. We cannot say the ALJ was out of line to wonder, if one claims she cannot send the children to school because she cannot button a button, why bother with the phone and Facebook at all? But, in any event, and of greater significance, there is also objective evidence to show the alleged symptoms in plaintiff's hands were not as bad as she claimed. As the ALJ noted, examinations revealed normal grip strength, reflexes and sensation. (R. 21). Moreover, one of the jobs the vocational expert and, by extension, the ALJ found Plaintiff could do was call-out operator which requires only occasional manipulation or fingering. Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, at 341 (http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf).

In the end, Plaintiff has failed to demonstrate – as is her burden – that the ALJ's assessment of her allegations was "patently wrong." *See Hammerslough v. Berryhill*, 758 Fed.Appx at 8; *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *McHenry v. Berryhill*, 911 F.3d 866, 874 (7th Cir. 2018). The ALJ's decision may not be perfect, but it need not be. *Buchholtz v. Barnhart*, 98 F. App'x 540, 544 (7th Cir. 2004); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1998).

Plaintiff may not have "claim[ed] to be paralyzed,*" Carradine*, 360 F.3d at 755, but she does claim to be unable to do much at all for most of every week. When a claimant paints a self-portrait so drastically limited as plaintiff has attempted to do here, the extent and degree of her allegations are such that it would take only a little evidence to discredit them. And here there is substantial evidence – certainly much more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)(". . . the

threshold for such evidentiary sufficiency is not high.").

**CONCLUSION**

For the foregoing reasons, the ALJ's decision is affirmed, and the Commissioner's motion for summary judgment [Dkt. #28] is granted.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 8/8/19